**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**JAMES KEN ANDERSON
ADC #99355**                                                                                **PLAINTIFF**

**V.**                                        **CASE NO. 5:11CV00258 JLH/BD**

**RAY HOBBS, et al.**                                                                **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United

States District Judge J. Leon Holmes.  Any party may file written objections to this

Recommendation.

Objections must be specific and must include the factual or legal basis for the

objection.  An objection to a factual finding must identify the finding of fact believed to

be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the

United States District Court Clerk within fourteen (14) days of this Recommendation.  A

copy will be furnished to the opposing party.

If no objections are filed, Judge Holmes can adopt this Recommendation without

independently reviewing all of the evidence in the record.  By not objecting, you may also

waive any right to appeal questions of fact.

Mail objections and "statement of necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.   <u>Background</u>:

Plaintiff James Ken Anderson, an Arkansas Department of Correction ("ADC") inmate, filed this lawsuit alleging that the named Defendants acted with deliberate indifference to his medical needs and discriminated against him in violation of the Americans with Disabilities Act ("ADA").  Mr. Anderson names the following medical providers as Defendants:  Dr. Roland Anderson, former Regional Medical Director for Corizon, Inc. (f/k/a Correctional Medical Services, Inc.); Dr. John Lytle, a private physician licensed by the State of Arkansas; Dr. David Ware, a contract physician with Corizon and the Medical Director of the Ouachita River Unit of the ADC; and Deborah York, a registered nurse formerly employed by Corizon as the Health Services Administrator at the Pine Bluff Unit of the ADC (collectively, "Medical Defendants").  In addition, Mr. Anderson names the following ADC employees as Defendants:  Ray Hobbs, Director of the ADC; Ray Naylor, Assistant Director of the ADC; Wendy Kelley, Deputy Director for Health and Correction Programs for the ADC; Larry May, Assistant Director of the ADC; Grant Harris, Warden of the Varner Unit of the ADC; Benny Magness, Chairman of the Board of Correction; and G. David Guntharp, former Director of the

Department of Community Correction (collectively, "ADC Defendants").  He requests

both money damages and injunctive relief.

All Defendants have moved for summary judgment, and Mr. Anderson has

responded to the motions.  (#253, #257, #262, #264, #271)  Based on the evidence

presented, the Court recommends that the Defendants' motions for summary judgment

(#253, #257) be GRANTED, and that Mr. Anderson's claims be DISMISSED.

## III.   **Discussion:**

A.     Standard

Summary judgment is appropriate when the evidence, viewed in the light most

favorable to the nonmoving party, presents no genuine dispute as to any material fact.

FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  The moving

party bears the initial responsibility of demonstrating the absence of a genuine dispute of

material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).

If the moving party meets this burden, the nonmoving party must respond by coming

forward with specific facts establishing a genuine dispute for trial.  *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  When a plaintiff cannot come

forward with enough evidence to establish a necessary element of her claim, the moving

party is entitled to judgment as a matter of law on that claim.  *Celotex Corp.*, 447 U.S. at

322-23, 106 S.Ct. at 2552.

B.      Medical Defendants

The Medical Defendants argue that:  Mr. Anderson's claims that arose prior to September 30, 2008 are time-barred; Mr. Anderson's claims against Dr. Ware are precluded by the Prison Litigation Reform Act's ("PLRA") exhaustion requirement; and that his deliberate-indifference claims, conspiracy claim, and ADA claim fail as a matter of law.

1.      Statute of Limitations

The applicable limitations period for § 1983 actions is determined by looking to state tort law.  In Arkansas, the general personal injury statute of limitations is three years. ARK. CODE ANN. § 16–56–105.  See also *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (applying three-year statute of limitations to § 1983 claim) and *Morton v. City of Little Rock*, 934 F.2d 180, 182 (8th Cir. 1991) (holding that the applicable statute of limitations period for a § 1983 claim in Arkansas is three years).  Because Mr. Anderson filed this lawsuit on September 30, 2011, he is barred from proceeding on claims that accrued prior to September 30, 2008.

2.      Exhaustion - Dr. Ware

Mr. Anderson claims that Dr. Ware made false declarations in January of 2012. Because Mr. Anderson filed this lawsuit in September 2011, obviously he did not exhaust his administrative remedies regarding this claim before the lawsuit was filed.  Under the PLRA, prisoners must exhaust all "available" remedies before filing suit under 42 U.S.C.

4

§ 1983. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining the

proper exhaustion of remedies "means using all steps that the [prison] holds out, and

doing so properly").  If exhaustion is not complete at the time a lawsuit is filed, the Court

must dismiss all unexhausted claims.  *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir.

2003).  Because Mr. Anderson could not have exhausted his claim against Dr. Ware prior

to filing this lawsuit, his claims against Dr. Ware must be dismissed, without prejudice.

        3.        Deliberate Indifference

        a.        Standard

"Deliberate indifference to serious medical needs of prisoners constitutes the

unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."

*McRaven v. Sanders*, 577 F.3d 974, 979 (8th Cir. 2009) (quoting *Estelle v. Gamble*, 429

U.S. 97, 104 (1976)).

To show the prison officials failed to provide adequate medical treatment,

Mr. Anderson must prove "(1) he suffered from an objectively serious medical need, and

(2) defendants knew of the need yet deliberately disregarded it."  *Hartsfield v.

Colburn*, 371 F.3d 454, 457 (8th Cir. 2004).  "A serious medical need is one that has

been diagnosed by a physician as requiring treatment, or one that is so obvious that

even a layperson would easily recognize the necessity for a doctor's attention."

*Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  A prisoner alleging a delay

in treatment must present verifying medical evidence that the prison officials

"ignored an acute or escalating situation or that [these] delays adversely affected his

prognosis."  See *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995) (quoting

*Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995), abrogated on other grounds

by *Johnson v. Jones*, 515 U.S. 304 (1995), as recognized in *Reece*, 60 F.3d at 492

(internal quotation marks omitted)).

  b.    Hepatitis C and Splenomegaly

  Mr. Anderson was treated for hepatitis C for 48 weeks in 2005.  (#255-1 at p.6)  At

the conclusion of therapy, a gastroenterologist determined that Mr. Anderson was a "non-

responder" and the doctor did not recommend further interferon or ribavirin treatment.

(#255-1 at p.6)

  In 2010, Dr. Gregory McKinney (who is not a party to this lawsuit) saw Mr.

Anderson and informed him about a clinical study at the University of Arkansas for

Medical Sciences ("UAMS") regarding triple therapy treatment for certain individuals

carrying the hepatitis C virus.  (#255-7 at p.1)  Notably, Dr. McKinney was not aware of

whether Mr. Anderson met the required criteria to participate in the clinical trial, and the

Food and Drug Administration did not approve this treatment until January 2012.  (#255-

7 at pp.1-2)  Despite these facts, Mr. Anderson claims that Defendant Dr. Anderson

violated his constitutional rights by failing to provide him the triple therapy treatment.

  The undisputed evidence reveals that Mr. Anderson was routinely seen in the

hepatitis C chronic care clinic at the ADC.  (#255-1 at pp.40-42; #255-1 at pp.45-49;

#255-1 at pp.60-62; #255-1 at pp.67-68; #255-1 at pp.74-77; #255-1 at pp.79-80)  In November of 2010, an ultrasound revealed that Mr. Anderson's liver was normal.  (#255-1 at p.54)  Although the ultrasound also revealed that Mr. Anderson had a slightly enlarged spleen, he was described as asymptomatic.  (#255-1 at p.60)  Accordingly, the finding was deemed not "clinically relevant."  (#255-6 at p.1)

Defendant Ware wrote consultation requests for Mr. Anderson to receive an internal medicine evaluation on October 29, 2011, and again on November 12, 2011.  (#255-1 at p.75, 79)  Both requests received alternative treatment recommendations by Regional Medical Director Michael Persons (not party to this lawsuit).

Because Mr. Anderson is not suffering from any health issues as a result of hepatitis C and because his condition has consistently been monitored, he has failed to prove that the Medical Defendants acted with deliberate indifference.  It is undisputed that his conditions have not worsened, and although he may suffer from mild splenomegaly, that condition also is being monitored.

Further, at this time, no ADC inmate has received the newly approved triple-therapy treatment.  (#255-7 at p.1)  Once guidelines are established for the treatment, Mr. Anderson will be considered to receive the treatment if he is eligible.  (#255-7 at p.2)  Therefore, this claim should be dismissed, with prejudice.

c.    Knee Replacement

In April of 2009, Mr. Anderson was seen by Dr. Turner (not a party to this lawsuit) on two occasions complaining of knee pain.  (#255-1 at pp.8,9)  Dr. Turner submitted an orthopedic evaluation, which Defendant Anderson approved on May 4, 2009.  (#255-1 at pp.10,11)

In June of 2009, Defendant Lytle conducted an x-ray examination of Mr. Anderson's knee and concluded that Mr. Anderson was a candidate for a total knee replacement.   (#255-1 at p.12; #255-5 at p.1)

Defendant Anderson received Defendant Lytle's examination report and discussed those results with Defendant Lytle.  They agreed that they would first attempt to resolve Mr. Anderson's pain using a more conservative treatment plan, and then proceed to surgical intervention if necessary.  (#255-1 at p.16; #255-5 at pp.1-2)

In July of 2009, Defendant Lytle met with Mr. Anderson to administer a steroid injection.  (#255-1 at p.17; #255-5 at p.2)  Following the injection, Mr. Anderson reported "immediate and significant relief."  (#255-1 at p.17; #255-5 at p.2)  Defendant Lytle requested that he return in six weeks, or as needed.  (#255-1 at p.17; #255-5 at p.2)

In August of 2009, Mr. Anderson returned to the unit clinic complaining of significant pain in his left knee.  (#255-1 at p.19)  Dr. Ifediora (not a party to this lawsuit) provided Mr. Anderson ibuprofen and naproxen.  (#255-1 at p.19)  When Mr. Anderson returned to the unit clinic seventeen days later, Dr. Ifediora determined that he needed to be examined by Defendant Lytle.  (#255-1 at p.21)

On September 2, 2009, Defendant Lytle examined Mr. Anderson and concluded that he needed to have a total knee replacement.  (#255-1 at p.25; #255-5 at p.2)  On September 17, 2009, Dr. Ifediora submitted a consultation request for total knee replacement, and on October 29, 2009, Defendant Anderson submitted and approved a consultation request for a total knee replacement.  (#255-1 at pp. 27-30)  Because Defendants Lytle and Anderson determined that Mr. Anderson would need at least three months of rehabilitation after the surgery, Defendant Kelley informed Mr. Anderson that if he was granted parole, a medical hold would be placed on him.  (#257-1 at pp.15-16)  Mr. Anderson, however, was denied parole.  (#257-1 at p.16)

On December 1, 2009, Defendant Lytle performed a total knee replacement surgery on Mr. Anderson using Zimmer NexGen Legacy Series components.  (#255-1 at pp.34-36; #255-5 at pp.2-3)  On January 20, 2010, Mr. Anderson saw Defendant Lytle for a "post-op" examination.  (#255-1 at p.39; #255-5 at p.3)  Defendant Lytle noted that Mr. Anderson was doing well; there was no sign of infection; and the wound was "well-healed."  (#255-1 at p.39; #255-5 at p.3)  Defendant Lytle also conducted an x-ray of Mr. Anderson's knee, which revealed the "total knee arthroplasty in excellent position." (#255-1 at p.39; #255-5 at p.3)

On November 17, 2010, Mr. Anderson came to the infirmary concerned that the prosthetic device in his knee had been recalled.  (#255-1 at p.52)  Mr. Anderson also

complained about a rubbing sensation in his knee.  Two x-rays were taken of Mr. Anderson's knee.  Neither revealed abnormalities.  (#255-1 at p.53)

Defendant York then began her investigation to determine whether any of the components used in Mr. Anderson's knee replacement had been recalled.  (#255-4)  At the conclusion of her investigation, she determined that none of the lot numbers for the hardware that had been implanted had been recalled.  (#255-1 at pp.58-59; #255-4)

On April 28, 2011, x-rays were taken of Mr. Anderson's knee.  (#255-1 at p.63) There was no evidence of fracture, dislocation, or loosening.  *Id*.  X-rays were again taken of Mr. Anderson's knee in September of 2011.  (#255-1 at p.69)  Although the alignment was normal, there was fluid noted in the upper patella.  *Id*.  Mr. Anderson was scheduled for a follow-up visit with Defendant Ware.  (#255-1 at p.70)

Defendant Ware examined Mr. Anderson four times in October of 2011, and once again in November of 2011.  (#255-1 at pp.71, 72, 73, 74, 76)  Although Mr. Anderson apparently walks with a slight limp, each of those examinations revealed that Mr. Anderson's knee was either stable or normal.  *Id*.  After November of 2011, Defendant Ware did not see Mr. Anderson again with regard to his knee.

In his supplemental response to the summary judgment motion, Mr. Anderson states that previously this month, his knee was examined at UAMS and that an orthopedic specialist has recommended that Mr. Anderson undergo knee revision surgery within

three months.  (#271)  Even assuming these facts to be true, the Medical Defendants are entitled to judgment as a matter of law on Mr. Anderson's deliberate-indifference claim.

Based on the undisputed evidence presented, the Medical Defendants promptly responded to each of Mr. Anderson's medical requests regarding his left knee.  Mr. Anderson underwent knee replacement surgery and received multiple examinations following his surgery.  In addition, Defendant York promptly investigated whether any of Mr. Anderson's knee components had been recalled when Mr. Anderson made that allegation.  Although Mr. Anderson now claims that he is going to undergo knee revision surgery, based on the undisputed evidence presented, there is no evidence indicating that this proposed surgery is connected to any deliberate indifference on the part of any of the named Defendants.  In sum, the undisputed evidences fails to show that the Medical Defendants ignored or deliberately disregarded Mr. Anderson's medical needs regarding his left knee.  This claim should be dismissed, with prejudice.

4.    Americans with Disabilities Act

Tittle II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

Here, Mr. Anderson claims that:  he was a disabled person as defined by the ADA; he was entitled to medical treatment under the ADA; and he was subject to discrimination

based upon his disabilities.  Based on the evidence presented, however, Mr. Anderson's

ADA claim against the Medical Defendants fails as a matter of law.

First, the ADA defines "public entity" as any state or local government.  *Id*.   Title

II does not apply to state officials in their individual capacities.  *Randolph v. Rodgers*,

253 F.3d 342 (8th Cir. 2001).  Accordingly, Mr. Anderson's ADA claims against the

Medical Defendants in their individual capacities fail.

Further, to the extent that Mr. Anderson claims that the Medical Defendants

violated the ADA for any role that they played in the denial of his parole, this claim also

fails.  Assuming that parole is considered a benefit as defined by the ADA, Mr. Anderson

has failed to provide any evidence to show that any of the Medical Defendants were

involved in the denial of his parole.[1]  See *Thompson v. Davis*, 295 F.3d 890, 899 (9th Cir.

2002) (concluding that "parole proceedings constitute an activity of a public entity that

falls wtihin the ADA's reach")  Although Defendant Anderson discussed the need to

place a medical hold on Mr. Long if he were granted parole, Mr. Anderson's parole was

denied.  Mr. Anderson has failed to present any proof that any of the Medical Defendants

were involved in that decision.  As a result, this claim fails.

---

[1]   The Medical Defendants correctly argue that Mr. Anderson has no liberty
interest in parole.  However, because Mr. Anderson asserts a claim under the ADA, rather
than a due process claim under the Fourteenth Amendment, for purposes of this motion,
the Court will assume that parole is considered a benefit as defined by the ADA.

Finally, to the extent that Mr. Anderson claims that the Medical Defendants violated the ADA based on their medical treatment decisions, this claim also fails.  Mr. Anderson does not claim that the Medical Defendants discriminated against him based on his disability.  Rather, he claims that the Medical Defendants failed to provide proper treatment for his disability.  Mr. Anderson cannot bring such a claim under the ADA. *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005).

Therefore, the Medical Defendants are entitled to summary judgment on Mr. Anderson's ADA claim.

C.     ADC Defendants

Mr. Anderson alleges that Defendant Kelley acted with deliberate indifference to his serious medical needs.  In addition, he claims that Defendants Kelley, Hobbs, Naylor, May, Harris, Magness, and Guntharp retaliated against him and violated the Americans with Disabilities Act by denying him medical treatment; refusing to allow him to participate in the work-release program; refusing to allow him to participate in the hobby-craft program; and denying him parole.[2]  The ADC Defendants are entitled to judgment as a matter of law on Mr. Anderson's claims against them.

---

[2]  In their motion, the ADC Defendants argue that they are entitled to qualified immunity and sovereign immunity.  Because the Court finds that Mr. Anderson's claims fail as a matter of law, the Court will not address the Defendants' qualified immunity argument in this Recommendation.  The ADC Defendants are correct that Mr. Anderson's claims for money damages against them in their official capacities are barred by sovereign immunity.

1.      Deliberate Indifference - Defendant Kelley

Mr. Anderson submitted over thirty medical grievances prior to filing this lawsuit. The undisputed evidence shows that Defendant Kelley properly responded to each of those grievances by reviewing Mr. Anderson's medical jacket.  Although Mr. Anderson may not be pleased with the medical care that he was provided, it is clear that his medical needs were consistently monitored.  As a result, he cannot credibly argue that Defendant Kelley acted with deliberate indifference to his medical needs.  Therefore, this claim against Defendant Kelley fails as a matter of law.

2.      Respondeat Superior

The ADC Defendants also argue that Mr. Anderson names them as Defendants based upon their apparent positions as ADC supervisors.  In a § 1983 action, a supervisor cannot be held vicariously liable for the constitutional violations of a subordinate based solely on the supervisory relationship.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010);  and *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (holding that the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").  Therefore, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948.

14

Here, Mr. Anderson has not included any facts that could reasonably lead to the conclusion that Defendants Kelley or any other named ADC Defendant were involved in any of Mr. Anderson's medical decisions.  Accordingly, to the extent that Mr. Anderson claims that these Defendants acted with deliberate indifference to his medical needs, those claims cannot move forward.[3]

3.      Exhaustion

ADC Defendants argue that Mr. Anderson failed to exhaust his claim that he was transferred in retaliation for exercising his First Amendment rights.  The PLRA requires that all claims be exhausted through the prison's administrative process before they can be included in a federal lawsuit.  Based on the undisputed evidence, the retaliation claim was not fully exhausted.

Barbara Williams, the Inmate Grievance Supervisor, states that Mr. Anderson did not exhaust any grievances alleging that any of the ADC Defendants retaliated against him by transferring him to another facility.  (#257-3)  Mr. Anderson has not come forward with any evidence to rebut the Defendants' evidence showing that he did not

---

[3] To the extent that Mr. Anderson claims that these Defendants denied his constitutional rights based on their participation in the decision to deny him parole, this claim also fails.  Mr. Anderson has no constitutional right to parole.  *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) (the Due Process Clause does not create a protected liberty interest in the possibility of parole or release before a validly imposed sentence) and *Hamilton v. Brownlee*, 237 Fed. Appx. 114, *1 (8th Cir. 2007) (unpub. per curiam) (inmate had "no constitutionally protected liberty interest in the possibility" of parole even when parole board rescinded "an initially favorable parole decision").

exhaust this claim; and he has not provided evidence that he was prohibited from pursuing administrative remedies.  Because the undisputed evidence shows that Mr. Anderson did not fully exhaust a grievance complaining that he was transferred in retaliation for exercising his First Amendment rights against the ADC Defendants, this claim must be dismissed, without prejudice.

    4.      Americans with Disabilities Act

    Mr. Anderson claims that the ADC Defendants violated the ADA by failing to provide him:  health services, participation in the work-release; participation in the hobby-craft program; and parole.  This claim also fails.

    As explained above, Mr. Anderson's claims against the ADC Defendants in their individual capacities must be dismissed.  See *Randolph v. Rogers*, *supra*.  Further, to the extent that Mr. Anderson claims that the ADC Defendants violated the ADA based on their medical treatment decisions, this claim also fails.  See *Burger v. Bloomberg*, *supra*. In addition, assuming that parole and participation in work-release and hobby-craft programs are considered benefits under the ADA, Mr. Anderson has not pleaded facts or provided any evidence to show that he was denied any such benefit by any of the ADC Defendants.[4]  Although he claims that Defendant Kelley stated that he would be released

---

    [4]  The ADC Defendants also correctly argue that Mr. Anderson has no liberty interest in parole or participation in work release programs.  However, because Mr. Anderson asserts a claim under the ADA, rather than a due process claim under the Fourteenth Amendment, for purposes of this motion, the Court will assume that these are benefits as defined by the ADA.

if he did not want to undergo knee replacement surgery, he has not presented any evidence to support such a statement.  (#264 at p.45)  To the contrary, Defendant Kelley has testified that she was not involved in any way in the parole board's decision to deny Mr. Anderson parole.  (#257-1 at p.15)

Further, although he claims that the ADC Defendants have prevented him from participating in both the work-release and hobby-craft programs, Mr. Anderson fails to provide any factual support for such claims.  Rather, the documents attached to his response to the summary judgment motions show that Mr. Anderson was not permitted to participate in work release based on his "propensity for violence" and that he was placed on the waiting list for the hobby-craft program.  (#264 at pp.73, 74, 79)  Notably, although Defendants May and Naylor responded to Mr. Anderson's grievances raising these issues, there is no indication that any of the ADC Defendants were involved in the decision to deny Mr. Anderson's requests to participate in either program.   (#264 at pp.73, 74)  Because Mr. Anderson's unsubstantiated allegations are insufficient to create a genuine issue of material fact, the ADC Defendants are entitled to judgment as a matter of law on Mr. Anderson's ADA claim.

5.    Conspiracy

Mr. Anderson has failed to provide specific facts showing that the ADC Defendants conspired to violate his constitutional rights.  See *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010) (conspiracy claim under § 1983 alleging violation of

17

constitutional rights requires allegations of specific facts tending to show meeting of minds among alleged conspirators). Therefore, this claim must be dismissed.

IV.  **Conclusion**:

The Court recommends that the motions for summary judgment (#253, #257) be GRANTED. Any of Mr. Anderson's claims arising prior to September 30, 2008 should be DISMISSED, with prejudice. Mr. Anderson's claims against Defendant Ware should be DISMISSED, without prejudice. His deliberate indifference and ADA claims against Defendants Anderson, Lytle, and York should be DISMISSED, with prejudice. His deliberate indifference, ADA, and conspiracy claims against Defendants Kelley, Hobbs, Naylor, May, Harris, Magness, and Guntharp should be DISMISSED, with prejudice. His retaliation claim against Defendants Kelley, Hobbs, Naylor, May, Harris, Magness, and Guntharp should be DISMISSED, without prejudice. Finally, Mr. Anderson's motion for sanctions (#263) and his motion for order (#272) should be DENIED, as moot.

DATED this 29th day of January, 2013.

_____
UNITED STATES MAGISTRATE JUDGE